IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

ANGELA DAWN MOODY                                                                    PLAINTIFF

V.                                                          CIVIL ACTION NO:  1:14CV197-NBB-DAS

LOWNDES COUNTY, MISSISSIPPI;
TONY COOPER, in His Individual Capacity;
and SCOTT FARRELL, in His Individual Capacity                              DEFENDANTS

## **MEMORANDUM OPINION**

This cause comes before the court upon the defendants' motions for summary judgment. Upon due consideration of the motions, responses, exhibits, and applicable authority, the court is ready to rule.

<u>Factual and Procedural Background</u>

The plaintiff, Angela Dawn Moody, was married to defendant Scott Farrell in 2003 and divorced in January 2011.  The couple have one child from the marriage, a daughter.  As part of the divorce decree, Moody received primary custody of their daughter with visitation rights granted to Farrell.  At the time of the events giving rise to this action, Moody was a teacher at New Hope Elementary School in Lowndes County, Mississippi.

Farrell came to the Lowndes County Sheriff's Department on November 28, 2012, and alleged to defendant Tony Cooper, an investigator with the sheriff's department, that Moody had been harassing him via electronic communications.  Cooper referred Farrell to the Lowndes County Justice Court and shortly thereafter took an extended leave from his employment for approximately two months.  During the time Cooper was out of the office on leave, Farrell met with Allison Kizer, the county prosecuting attorney for Lowndes County, and submitted to her a

criminal affidavit for misdemeanor cyberstalking against Moody. Kizer chose not to move forward on Farrell's criminal affidavit because, in her opinion, the communications Moody sent to Farrell did not meet the standards for a charge of misdemeanor cyberstalking.

Farrell contacted Cooper again when Cooper returned from his extended leave alleging that Moody continued to harass him and asking Cooper to arrest her. Cooper met with Kizer to discuss her opinion about appropriate charges, and Kizer opined that the charges would fall under the felony cyberstalking statute, not the misdemeanor statute.

On November 5, 2013, Cooper contacted Moody to discuss Farrell's allegations, and Moody referred him to her attorney at the time, Michael Farrow. Cooper spoke with Farrow the same day and was advised that Moody would not present her side of the story to the sheriff's department. Cooper then drafted and filed with the Lowndes County Justice Court a criminal affidavit that stated as follows:

> Count: 01
>
> Angela Farrell (Moody) did willfully, unlawfully and feloniously electronically mail or electronically communicate to Lawrence Scott Farrell repeatedly for the purpose of threatening, terrifying, or harassing Lawrence Scott Farrell.
>
> To wit: On November 28, 2012, Scott Farrell reported he has received numerous text messages and emails from his former wife, Angela Farrell, after telling her to cease emailing and texting him. Mr. Farrell has produced numerous messages sent by Mrs. Farrell.

The affidavit erroneously states that Moody was charged under Miss. Code Ann. § 97-45-15(1)(a) but should state § 97-45-15(1)(b). Moody admitted at her deposition that the factual allegations contained in the affidavit set forth above represent a "true statement."

Cooper's criminal affidavit was filed with the Lowndes County Justice Court on November 6, 2013, and the Justice Court, Judge Peggy G. Phillips presiding, issued an arrest

warrant for Moody after a hearing and finding of probable cause. Cooper then contacted Moody and made arrangements for her to turn herself in to the sheriff's department, choosing not to arrest her at the elementary school where she worked. Moody agreed and turned herself in on November 7, 2013, at 4:13 p.m. At Cooper's request, Sheriff Mike Arledge approved a recognizance bond for Moody, and Moody was released on her signature at 4:42 p.m. the same day.

Moody's initial appearance before the Lowndes County Justice Court occurred on November 13, 2013. She was accompanied by her attorney, Michael Farrow. Judge Phillips set Moody's bail at $2500. Though it is uncontested that the judge did not advise Moody that she was required to use a bail bondsman, Moody assumed that such was the case and apparently relied on her attorney to inform her otherwise, which he did not do. Moody thus executed an appearance bond with a bail bondsman the same day.

The following day, an article about Moody's arrest appeared in the local newspaper entitled "New Hope teacher arrested for cyber stalking." The article included Moody's mugshot.

Moody's preliminary hearing was held before Lowndes County Justice Court Judge Ron Cooke on December 17, 2013. Moody was represented by Tim Hudson who called Cooper as a witness during the hearing and asked him numerous questions about the copies of electronic communications that were made part of the record. Moody admitted in her deposition taken as part of the present litigation that Cooper did not provide any false or misleading testimony at the hearing. At the conclusion of the hearing, Judge Cooke dismissed the charge of felony cyberstalking against Moody.

Moody filed this action pursuant to 42 U.S.C. § 1983 on October 21, 2014, alleging federal claims for violation of her rights under the First, Fourth, and Fourteenth Amendments to the United States Constitution and state law claims under the Mississippi Torts Claims Act ("MTCA") against Lowndes County, Mississippi, and Cooper, in his individual capacity, as well as Farrell, in his individual capacity. She asks for, inter alia, actual and punitive damages against defendants Cooper and Farrell[1] for arrest without probable cause and in violation of the Fourth and First Amendments as well as damages for embarrassment caused her by publication of her arrest in the Lowndes County newspaper. She also asserts that Farrell, with the assistance of Cooper, caused her to be arrested in retaliation for her reporting Farrell to the Alabama Department of Human Resources for his alleged failure to keep up to date with his child support payments. She also asks the court to declare that defendant Lowndes County violated the Fourteenth Amendment by failing to advise her of the procedures for bail established by Mississippi Uniform Circuit and County Court Rule 6.02.

The defendants were properly served and timely answered the plaintiff's complaint. They now move for summary judgment on all claims. Further, the individual defendants, Cooper and Farrell, assert that they are entitled to qualified immunity, though Farrell also asserts that he is not a "state actor" under section 1983.

---

[1]Moody alleges that Farrell is liable under section 1983 as a "state actor," even though he is a private citizen.

## Standard of Review

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). On a motion for summary judgment, the movant has the initial burden of showing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the movant makes such a showing, the burden then shifts to the non-movant to "go beyond the pleadings and . . . designate specific facts showing that there is a genuine issue for trial." *Id.* at 324. Before finding that no genuine issue for trial exists, the court must first be satisfied that no rational trier of fact could find for the non-movant. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "Summary judgment, although a useful device, must be employed cautiously because it is a final adjudication on the merits." *Jackson v. Cain*, 864 F.2d 1235, 1241 (5th Cir. 1989).

## Analysis

The plaintiff alleges that Lowndes County Sheriff's Department investigator Tony Cooper violated her Fourth Amendment rights by "causing Plaintiff to be arrested when he knew there was no probable cause for the arrest . . . ." The plaintiff also alleges that Cooper violated her First Amendment rights because he arrested her for engaging in protected speech – specifically, that the content of the electronic communications at issue here pertained to her daughter and Farrell's alleged failure to make his child support payments in accordance with the couple's divorce decree.

Qualified immunity protects a police officer or other person acting under color of state law "insofar as his conduct does not violate clearly established statutory or constitutional rights

5

of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818-19 (1982). The court is to apply a two-step analysis, now discretionary, to determine whether a government official is entitled to qualified immunity. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). "First, the plaintiff must show that he suffered a constitutional violation, and then we must determine whether the action causing the violation was objectively unreasonable in light of clearly established law at the time of the conduct." *Lacy v. Shaw*, 357 Fed. App'x 607, 609 (5th Cir. 2009) (citing *Freeman v. Gore*, 483 F.3d 404, 410 (5th Cir. 2007)). Qualified immunity "provides ample protection to all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

It is, of course, axiomatic that the Fourth Amendment requires the existence of probable cause before a police officer may perform a custodial arrest or "cause[ ] any significant pretrial restraint of liberty." *Martin v. Thomas*, 973 F.2d 449, 453 (5th Cir. 1992). Addressing false arrest allegations within the context of qualified immunity analysis, the Supreme Court has explained:

> At common law, in cases where probable cause to arrest was lacking, a complaining witness' immunity turned on the issue of malice, which was a jury question. Under the *Harlow* standard, on the other hand, an allegation of malice is not sufficient to defeat immunity if the defendant acted in an objectively reasonable manner. The *Harlow* standard is specifically designed to avoid excessive disruption of government and permit the resolution of many insubstantial claims on summary judgment, and we believe it sufficiently serves this goal. Defendants will not be immune if, on an objective basis, it is obvious that no reasonably competent officer would have concluded that a warrant should issue; but if officers of reasonable competence could disagree on this issue, immunity should be recognized.

6

*Id.* "Even law enforcement officials who reasonably but mistakenly conclude that probable cause is present are entitled to [qualified] immunity." *Haggerty v. Texas Southern Univ.*, 391 F.3d 653, 656 (5th Cir. 2004).

Cooper's personal involvement with this case in his individual capacity was submitting a criminal affidavit to the Lowndes County Justice Court in support of a felony cyberstalking charge against Moody. Justice Court Judge Peggy Phillips then issued an arrest warrant for Moody after a hearing and finding of probable cause. "Where an arrest is made under authority of a properly issued warrant, the arrest is simply not a false arrest." *Comer v. Lindley*, 318 F. App'x 300, 301 (5th Cir. 2009) (quoting *Smith v. Gonzales*, 670 F.2d 522, 526 (5th Cir. 1982)). The Fifth Circuit has recognized, however, that "both intentional misrepresentations in warrant applications and material omissions from the same may give rise to Fourth Amendment claims." *Johnson v. Norcross*, 565 F. App'x 287, 289 (5th Cir. 2014) (citing *Kohler v. Englade*, 470 F.3d 1104, 1113-14 (5th Cir. 2006)).

As the defendants argue, the court's analysis of whether Cooper is entitled to qualified immunity should focus on whether he had a reasonable basis to believe that Moody had violated the statute at issue. Contrary to the plaintiff's assertion that Cooper arrested Moody "when he knew there was no probable cause," Cooper maintains to this day that he did in fact have probable cause to arrest her and that he is entitled to qualified immunity.

"In making a determination of probable cause, we do not require a police officer to be perfect, nor do we want him always to err on the side of caution out of the fear of being sued." *Martin*, 973 F.2d at 453. It is required, however, that the police officer "make a reasonable determination whether probable cause exists." *Id.*

Cooper charged Moody with a violation of Miss. Code Ann. § 97-45-15(1)(b) which states:

> (1) It is unlawful for a person to (b) Electronically mail or electronically communicate to another repeatedly, whether or not conversation ensues, for the purpose of threatening, terrifying or harassing any person.

Cooper's affidavit in support of Moody's arrest warrant stated as follows:

> Count: 01
>
> Angela Farrell (Moody) did willfully, unlawfully and feloniously electronically mail or electronically communicate to Lawrence Scott Farrell repeatedly for the purpose of threatening, terrifying, or harassing Lawrence Scott Farrell.
>
> To wit: On November 28, 2012, Scott Farrell reported he has received numerous text messages and emails from his former wife, Angela Farrell, after telling her to cease emailing and texting him. Mr. Farrell has produced numerous messages sent by Mrs. Farrell.

Moody admitted at her deposition that the factual allegations contained in the criminal affidavit that Cooper presented to the Lowndes County Justice Court represent a "true statement."

The plaintiff has provided the court with a great deal of alleged facts that ultimately prove to be irrelevant to her claims. These include facts regarding Moody's personal background; her marriage to and divorce from Scott Farrell; problems, issues, and communications between Moody and Farrell subsequent to their divorce; Farrell's alleged "mental abuse of Moody"; Farrell's failure to keep up to date with his child support payments; and Moody's reporting Farrell to the Alabama Department of Human Resources. As Cooper was not apprised of these extenuating circumstances alleged by the plaintiff in her brief prior to his executing the criminal affidavit on November 6, 2013, the information has no bearing on the question of Cooper's entitlement to qualified immunity. The court will not hold Cooper accountable for information that was not presented to him, especially in light of the fact that

8

Cooper invited Moody and her attorney to his office to afford Moody an opportunity to explain her side of the story prior to his filing the affidavit. Moody refused Cooper's invitation, informing him that she would not come in unless under a warrant.

As the defendants note, the criminality of the electronic communications addressed by § 97-45-15(1)(b) is premised upon frequency (i.e., "repeatedly") and the nature of the conduct (i.e., "for the purpose of . . . harassing any person."). It is not premised upon the specific content of the communications. Accordingly, Cooper's affidavit in support of the arrest warrant was not premised upon the content of the communications but rather upon Moody's conduct. The Supreme Court has held that "no one has a right to press even 'good' ideas on an unwilling recipient." *Rowan v. U.S. Post Office Dep't*, 397 U.S. 728, 738 (1970). Further, "it has never been deemed an abridgement of freedom of speech or press to make a course of conduct illegal merely because the conduct was in part initiated, evidenced, or carried out by means of language, either spoken, written, or printed." *Giboney v. Empire Storage & Ice Co.*, 336 U.S. 490, 502 (1949).

Farrell provided Cooper with text messages, email correspondence, and Facebook posts between Moody and Farrell, which the defendants attached as exhibits to their motions for summary judgment. In two separate communications, Farrell instructed Moody to cease sending messages to him unless they were for the specific purpose of making arrangements regarding the couple's daughter. Farrell even informed Moody that he would consider further communications harassment. On November 24, 2012, Farrell stated in a text message to Moody, "Do not text me further unless it is to pick up my daughter. I said I will see you in court pertaining to anything else. This will be the only time I ask . . . . Future [sic] other than picking up [A]llie [daughter]

9

will be harassment." On September 2, 2013, Farrell again instructed Moody to stop contacting him, stating, "DO NOT contact me further unless it is to get my daughter for my visitation or info on her. Anything else is harassment." Yet, Moody continued to send harassing electronic communications to Farrell.

The plaintiff asserts that Lowndes County Justice Court Judge Cooke, in dismissing the case, stated that if they arrested every mother who was mad at her ex-husband for not paying child support, the jails would be full. Ostensibly, the judge made this statement and the plaintiff included it in her brief to note that the arrest in this case is perhaps not the kind of conduct the Mississippi Legislature intended to punish in enacting § 97-45-15(1)(b). This court does not necessarily disagree with Judge Cooke's statement or the plaintiff's position in this specific regard and even questions whether the statute itself would pass constitutional muster if for no other reason than the fact that it may be unconstitutionally overbroad. The issue of the constitutionality of the statute, however, is not before this court. The questions the court must address are whether probable cause existed for the plaintiff's arrest and whether the arrest violated the plaintiff's First and Fourth Amendment rights. The court answers these questions in the negative.

The record before the court reflects that Moody was technically in violation of § 97-45-15(1)(b), in that she did, repeatedly and for the purpose of harassing, electronically mail or electronically communicate to Farrell, and she continued to do so after he instructed her to stop. Cooper therefore had probable cause to arrest Moody and is, accordingly, entitled to qualified immunity as to the plaintiff's Fourth Amendment claim.

Likewise, the court finds that Cooper is entitled to qualified immunity as to the plaintiff's First Amendment claim. The substantive content of Moody's electronic communications to Farrell is not at issue because the criminality of the statute is not based thereon. That being said, many of the electronic communications sent by Moody to Farrell contain nothing but harassing content. For instance, Moody emailed Farrell shortly after his second marriage ended with a picture of his recently separated wife with another man, stating, "Glad your wife is moving on. And Michael [the other man] is a sweet sweet guy. She looks like she is much happier!!!" Moody even acknowledged in her deposition that there was no other reason to send this message than to be hurtful. "Resort to epithets or personal abuse is not in any proper sense communication of information or opinion safeguarded by the Constitution, and its punishment as a criminal act would raise no questions under that instrument." *Chaplinksy v. State of New Hampshire*, 315 U.S. 568, 572 (1942). In the end, whether Moody's communications related to child support, hurtful comments, or other matters, the record reflects that they were sent repeatedly, frequently, and in a harassing manner. This is a violation of Mississippi's felony cyberstalking statute, and Moody's mistaken assertion that she was engaging in protected speech in her electronic communications to Farrell does not alter that fact.

The plaintiff cites *Brooks v. City of West Point, Miss.*, 639 F. App'x 986 (5th Cir. 2016), in support of her argument that her arrest under Cooper's affidavit constitutes a violation of the First Amendment. The *Brooks* court held that a police officer was not entitled to qualified immunity when he arrested a person for cursing him and using profanity. *Id.* at 990. The plaintiff argues that cursing is simply one form of harassment. The court finds that *Brooks* is not analogous to the present case, however, because, as the Fifth Circuit acknowledged in *Brooks*,

11

Mississippi law is clear that profane remarks to law enforcement officers, without more, cannot be the basis for an arrest pursuant to Miss. Code Ann. § 97-35-7 ("Disorderly conduct; refusal to comply with police request"). *Id.* at 989 (citing *Jones v. State*, 798 So. 2d 1241, 1247-48 (Miss. 2001) (en banc) (holding that a defendant's profane remarks to a police officer were insufficient to establish that the defendant had engaged in disorderly conduct)). Mississippi law is *not* clear, however, as to the proposition the plaintiff appears to be arguing – that a person cannot be charged under § 97-45-15(1)(b) as long as the person's repeated, harassing electronic communications are limited to a legitimate exception, including divorce or child custody issues with the person's ex-spouse. The plaintiff has provided the court with no published opinion by the Mississippi Supreme Court, the Mississippi Court of Appeals, the Fifth Circuit Court of Appeals, or any federal district court within Mississippi limiting prohibited conduct in § 97-45-15(1)(b), and the court is aware of no such opinion.

Moody also asserts that she was arrested in retaliation for reporting Farrell to the Alabama Department of Human Resources. Because Cooper had probable cause to arrest Moody, Cooper is also entitled to "qualified immunity as to any claim plaintiff may be making for retaliatory arrest in violation of the First Amendment." *Carney v. Lewis*, No. 3:14cv286-TSL-JCG, 2014 WL 7231772, at *3 (S.D. Miss. Dec. 18, 2014) (citing *Reichle v. Howards*, 132 S. Ct. 2088, 2093 (2012) ("[A] plaintiff cannot state a claim of retaliatory prosecution in violation of the First Amendment if the charges were supported by probable cause.")); *Ashcraft v. City of Vicksburg*, 561 F. App'x 399, 401 (5th Cir. 2014) (holding that qualified immunity shielded defendant from First Amendment retaliatory arrest claim because the plaintiff could not

"demonstrate[ ] that she had a clearly established 'right' to be free from a retaliatory arrest that was otherwise supported by probable cause").

For the foregoing reasons, the court finds that Tony Cooper is entitled to qualified immunity. No genuine issue of material fact exists as to the plaintiff's claims against Cooper, and summary judgment will be granted in his favor.

Scott Farrell has also moved for summary judgment. Farrell is a private citizen and is not employed by Lowndes County. He argues that he is, therefore, not a "state actor" under section 1983. The court agrees.

"For a private citizen . . . to be held liable under section 1983, the plaintiff must allege that the citizen conspired with or acted in concert with state actors." *Priester v. Lowndes County*, 354 F.3d 414, 420 (5th Cir. 2004). The Fifth Circuit has held that a private citizen may be liable as a state actor under section 1983 if he was a "willful participant in joint activity with the State or its agents." *Priester*, 354 F.3d at 420 (quoting *Cinel v. Connick*, 15 F.3d 1338, 1343 (5th Cir. 1994)). To recover under this theory, the plaintiff must prove: "(1) an agreement between the private and public defendants to commit an illegal act and (2) a deprivation of constitutional rights." *Id.* "Allegations that are merely conclusory, without reference to specific facts, will not suffice." *Priester*, 354 F.3d at 420 (citing *Brinkmann v. Johnston*, 793 F.2d 111, 113 (5th Cir. 1986)).

The court has already found that Tony Cooper did not violate the plaintiff's constitutional rights, and the plaintiff has directed the court to no evidence that a conspiracy existed between Farrell and Cooper or Lowndes County or that Farrell's actions can be fairly attributed to the government. Moody has made only conclusory allegations against Farrell, which are insufficient

to survive summary judgment. The court therefore finds that no genuine issue of material fact exists as to Moody's federal claims against Farrell, and Farrell is entitled to judgment as a matter of law.

The plaintiff also asserts a state law claim against Farrell for abuse of process. "Mississippi jurisprudence defines abuse of process as 'the intentional use of legal process for an improper purpose incompatible with the lawful function of the process by one with an ulterior motive in doing so, and with resulting damages.'" *McCornell v. City of Jackson, Miss.*, 489 F. Supp. 2d 605, 610 (S.D. Miss. 2006) (quoting *Hyde Const. Co., Inc. v. Koehring Co.*, 387 F. Supp. 702, 711-14 (S.D. Miss. 1974)). The essential elements of an abuse of process claim are: "(1) that the defendant made an illegal and improper perverted use of the process, a use neither warranted nor authorized by the process; (2) that the defendant had an ulterior motive or purpose in exercising such illegal, perverted or improper use of process; and (3) that damage resulted to the plaintiff from the irregularity." *State for Use and Benefit of Foster v. Turner*, 319 So. 2d 233, 236 (Miss. 1975). The court finds that the use of the process in this case was both "warranted . . . [and] authorized by the process." Moody has failed to create a genuine issue of material fact as to this claim, and the court finds that it should be dismissed.

The plaintiff also brings claims against Lowndes County based on the issue of her bail. She seeks a declaration from this court that Lowndes County violated the Fourteenth Amendment by failing to give notice to arrestees of their right to be released by posting a ten percent deposit or otherwise being released upon their own recognizance and that Lowndes County violated Mississippi law by not warning the plaintiff of the procedures for bail established by Mississippi Uniform Circuit and County Court Rule 6.02. She also seeks a

declaration and injunction ordering Lowndes County to refrain from arbitrarily requiring persons to post financial bail through a professional bondsman without giving notice to the procedures described in Local Rule 6.02.

The plaintiff's claims relating to her bail are moot. "[C]laims for declaratory and injunctive relief regarding the bail procedures must . . . be dismissed as moot" upon an individual's release from jail. *Smith v. City of Tupelo, Miss.*, 281 F. App'x 279, 282-83 (citing *Murphy v. Hunt*, 455 U.S. 478, 483 (1982)). Moody was released within the hour after her bond was set at $2,500.00 by the Lowndes County Justice Court, and there is no indication that she will again be before that court; thus, all of her claims for declaratory and injunctive relief relating to bail are moot. Further, she was represented by counsel at her initial appearance, and her counsel could have advised her of her options regarding the posting of bail.

Further, plaintiff's allegations regarding bail are essentially a challenge to the actions of a local judge, Lowndes County Justice Court Judge Peggy Phillips. The Fifth Circuit has made clear that "[a] local judge acting in his or her judicial capacity is not considered a local government official whose actions are attributable to the county." *Cunningham ex rel. Cunningham v. City of West Point, Miss.*, 380 F. App'x 419, 421 (5th Cir. 2010) (quoting *Krueger v. Reimer*, 66 F.3d 75, 77 (5th Cir. 1995)). Therefore, "regardless of whether Cunningham suffered a constitutional deprivation, the City cannot be liable under the facts of this case because the claimed deprivation was not the result of an official policy, practice, or custom." *Cunningham*, 380 F. App'x at 422.

Finally, the plaintiff seeks a declaratory judgment that Lowndes County must indemnify Tony Cooper for any judgment against him. The court has found that Moody suffered no

constitutional violation at the hands of Cooper; thus, the plaintiff's request that the court order the county to indemnify Cooper is moot.

With the exception of her abuse of process claim addressed above, the plaintiff failed to make any argument related to state law claims in response to the defendants' summary judgment motions. Accordingly, the court finds that she has abandoned them. "A party who inadequately briefs an issue is considered to have abandoned the claim." *Cinel v. Connick*, 15 F.3d 1338, 1345 (5th Cir. 1994).

## Conclusion

For the foregoing reasons, the court finds that the defendants' motions for summary judgment are well taken and should be granted. A separate order in accord with this opinion shall issue this day.

This, the 22nd day of September, 2016.

/s/ Neal Biggers  
**NEAL B. BIGGERS, JR.**  
**UNITED STATES DISTRICT JUDGE**